UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ANA MARIA SOARES,<br><br>            Plaintiff,<br><br>     v.<br><br>STATE OF CALIFORNIA,<br>DEPARTMENT OF INDUSTRIAL<br>RELATIONS AND TERRY MENAFEE,<br><br>            Defendants. | CIV. NO. 2:16-00128 WBS EFB<br><br><u>MEMORANDUM AND ORDER RE: MOTION</u><br><u>TO DISMISS SECOND AMENDED</u><br><u>COMPLAINT</u> |

----oo0oo----

Plaintiff Ana Maria Soares brought this action based on alleged gender harassment and discrimination and her ultimate termination. Defendants State of California Department of Industrial Relations ("CDIR") and Presiding Administrative Law Judge Terry Menefee[1] now move to dismiss plaintiff's Second Amended Complaint ("SAC") for failure to state a claim upon which

---

[1] Plaintiff erroneously misspells Judge Menefee's last name as "Menafee." The court will use the correct spelling.

1

relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

I.   Factual and Procedural Background

Plaintiff worked as an Administrative Law Judge ("ALJ") for CDIR from August 2014 to July 29, 2015 and was the only female ALJ in the Fresno office.  (SAC ¶ 3.)  Judge Menefee served as plaintiff's supervisor during that time and allegedly harassed her because of her gender.  (Id. ¶¶ 4-5.)  After plaintiff complained about the harassment in November 2014 to Associate Chief Administrative Law Judge Thomas Clarke, the harassment allegedly increased.  (Id. ¶¶ 8-9.)  On May 25, 2015, Judge Menefee allegedly informed Judge Clarke that he "intended to reject Plaintiff from probation" and "influenced and participated in the decision to terminate" her, which was effective July 29, 2015.  (Id. ¶ 17.)

After plaintiff amended her Complaint once as a matter of course, the court granted defendants' motion to dismiss her cursory First Amended Complaint in its entirety.  Plaintiff then filed a Second Amended Complaint, alleging the same claims for (1) gender harassment against CDIR in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; (2) gender harassment against both defendants in violation of subsection 12940(j) of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12940-12951; (3) gender discrimination against CDIR in violation of Title VII; (4) gender discrimination against CDIR in violation of subsection 12940(a) of FEHA; (5) retaliation against CDIR in violation of Title VII; and (6) retaliation against CDIR in violation of subsection

2

12940(h) of FEHA. Defendants now move to dismiss plaintiff's SAC in its entirety pursuant to Rule 12(b)(6).

II. Analysis

On a motion to dismiss under Rule 12(b)(6), the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Under this standard, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." Twombly, 550 U.S. at 556.[2]

    A.    Harassment / Hostile Work Environment

Title VII and FEHA prohibit employers from harassing employees because of their gender and are "violated if []

---

[2] The court can consider documents attached to the complaint on a motion to dismiss, Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012), and thus the court will consider the exhibits plaintiff attached to her SAC.

3

1  harassment is so severe or pervasive as to create a hostile work
2  environment." Kortan v. Cal. Youth Auth., 217 F.3d 1104, 1109
3  (9th Cir. 2000) (citing 42 U.S.C. § 2000e-2(a)(1)); see also Cal.
4  Gov't Code § 12940(j) (making it unlawful for an employer
5  "because of . . . gender . . . to harass an employee"). Because
6  "Title VII and FEHA operate under the same guiding principles,"
7  courts often analyze Title VII and FEHA claims together. Brooks
8  v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000).
9       To establish a prima facie case for a hostile work
10 environment claim, a plaintiff must show that "(1) the defendants
11 subjected her to verbal or physical conduct based on her
12 [gender]; (2) the conduct was unwelcome; and (3) the conduct was
13 sufficiently severe or pervasive to alter the conditions of her
14 employment and create an abusive working environment." Surrell
15 v. Cal. Water Serv. Co., 518 F.3d 1097, 1108 (9th Cir. 2008); see
16 also Lyle v. Warner Bros. Television Prods., 38 Cal. 4th 264, 278
17 (2006) ("Because the workplace environment is one of the terms,
18 conditions, or privileges of employment, a plaintiff may
19 establish a violation of Title VII by showing that discrimination
20 because of sex has created a hostile or abusive work
21 environment.").
22      "'[H]arassing conduct need not be motivated by sexual
23 desire to support an inference of discrimination on the basis of
24 sex'" as "[t]he motivation can be a 'general hostility to the
25 presence of women in the workplace.'" Kortan, 217 F.3d at 1110
26 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75,
27 80 (1998)). "[A] workplace may give rise to liability when it
28 'is permeated with "discriminatory [sex-based] intimidation,

4

ridicule, and insult," that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."'" Lyle, 38 Cal. 4th at 279 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

To arise to a hostile work environment, the environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). "[W]hether an environment is sufficiently hostile or abusive" is determined by "'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. at 787-88 (quoting Harris, 510 U.S. at 22). "[S]poradic use of abusive language, gender-related jokes, and occasional teasing" are insufficient because the conduct must be "extreme" enough to "amount to a change in the terms and conditions of employment." Id. at 788 (internal quotation marks omitted). "The[] standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" Id. (quoting Oncale, 523 U.S. at 80).

In Reno v. Baird, the California Supreme Court distinguished between the type of conduct that constitutes harassment for which an individual employee could be personally liable from the type of conduct that constitutes discrimination or retaliation for which only the employer could be liable. 18 Cal. 4th 640 (1998); see also Jones v. Lodge at Torrey Pines

1  P'ship, 42 Cal. 4th 1158, 1173 (2008) (holding that only the
2  employer can be liable for retaliation under FEHA).  Harassment
3  "consists of a type of conduct not necessary for performance of a
4  supervisory job" and is "presumably engaged in for personal
5  gratification, because of meanness or bigotry, or for other
6  personal motives."  Reno, 18 Cal. 4th at 645-46 (internal
7  quotation marks and citation omitted).

8       On the other hand, "[m]aking a personnel decision is
9  conduct of a type fundamentally different from the type of
10 conduct that constitutes harassment" and may give rise to only a
11 discrimination claim against the employer.  Id. (internal
12 quotation marks and citation omitted).  Under this limitation,
13 "commonly necessary personnel management actions such as hiring
14 and firing, job or project assignments, office or work station
15 assignments, promotion or demotion, performance evaluations, the
16 provision of support, the assignment or nonassignment of
17 supervisory functions, deciding who will and who will not attend
18 meetings, deciding who will be laid off, and the like, do not
19 come within the meaning of harassment."  Id. at 646-47 (internal
20 quotation marks and citation omitted); accord Lawler v. Montblanc
21 N. Am., LLC, 704 F.3d 1235, 1244 (9th Cir. 2013); see also
22 Bennett v. Permanente, No. 14-CV-2676 YGR, 2015 WL 6952697, at *9
23 (N.D. Cal. Nov. 10, 2015) (applying Reno to a harassment claim
24 under Title VII).  Because making "personnel decisions is an
25 inherent and unavoidable part of the supervisory function," FEHA
26 limits recourse to a discrimination claim against the employer,
27 in part because a supervisor cannot perform his job and "refrain
28 from engaging in the type of conduct which could later give rise

1   to a discrimination claim." Reno, 18 Cal. 4th at 646-47
2   (internal quotation marks and citation omitted).[3]

3        In her FAC, plaintiff's allegations were cursory and
4   conclusory and consisted of only actions that appeared to be
5   commonly necessary personnel management actions. (See June 28,
6   2016 Order at 6:2-7:18 (Docket No. 20).) Plaintiff added
7   significantly more factual allegations to her SAC and included
8   alleged mistreatment outside the scope of her job duties or Judge
9   Menefee's supervisorial role. For example, plaintiff alleges

---

[3] Plaintiff argues that the California Supreme Court departed from Reno in Roby v. McKesson Corp., 47 Cal. 4th 686 (2010), and thus a harassment claim can be based exclusively on personnel management actions. In Roby, the Court reversed the appellate court's holding that evidence of personnel management actions could not be used "as evidence in support of a harassment claim" and thus had to be disregarded when determining whether sufficient evidence supported the jury's verdict in favor of the plaintiff on her harassment claim. Roby, 47 Cal. 4th at 700, 710. The Court rejected this limitation, explaining how discrimination and harassment claims "can overlap as an evidentiary matter" and that official employment actions may "contribute[] to the hostile message that [a supervisor] was expressing to [the employee] in other, more explicit ways." Id. at 709. The court also explained that "acts of discrimination can provide evidentiary support for a harassment claim by establishing discriminatory animus on the part of the manager responsible for the discrimination, thereby permitting the inference that rude comments or behavior by that same manager was similarly motivated by discriminatory animus." Id.

     The Roby Court did not, however, overrule Reno and described its analysis as "consistent" with Reno. Id. at 707, 708. After Roby, the Ninth Circuit has relied on Reno's holding that "harassment 'consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management.'" Lawler, 704 F.3d at 1244 (quoting Reno, 18 Cal. 4th at 646).

     Because plaintiff has sufficiently alleged conduct by Judge Menefee that was not necessary to his role as a supervisor, the court need not determine whether plaintiff's harassment claim could stand under Roby based solely on personnel management actions.

7

that Judge Menefee was always "gruff, acted irritated, and appeared to disbelieve" her and "solicited negative comments from attorneys who had appeared before" her.  (SAC ¶¶ 5.i, 15.)  Instead of assessing her current performance at an evaluation, Judge Menefee allegedly "attacked Plaintiff's prior work history from nine years before, constantly interrupted her, and made it clear that he disagreed with the HR determination that [she] was qualified" and "harangued [her] and refused to allow her to speak in response."  (Id. ¶ 5.e, Ex. 2 at 8.)  Judge Menefee also allegedly, and unjustifiably, described plaintiff's demeanor in court as "arbitrary, demeaning and degrading."  (Id. Ex. 2 at 3.)  He also allegedly sent plaintiff emails "questioning [her] every action" because he "did not see [her] as equal to the men."  (Id. Ex. 2 at 9.)  He allegedly did not believe anything plaintiff said, but accepted "what the male judges sa[id] without question."  (Id. Ex. 2 at 8.)

Plaintiff's SAC also explains the significance of the "tests" or "exams" he allegedly made her take on a weekly basis.  (Id. Ex. 2 at 7.)  Although Judge Menefee allegedly told plaintiff that he gave her the exams because he did not believe she was knowledgeable about workers' compensation law, she alleges that he started giving her exams before he had the opportunity to evaluate her knowledge.  (Id. Ex. 2 at 11.)  Plaintiff also alleges that Judge Menefee did not give these exams to other ALJs, including an ALJ hired after plaintiff who had no prior ALJ experience.  (Id. Ex. 2 at 9, 11.)  She also does not believe that any other presiding judges utilize such tests.  (Id. Ex. 2 at 11.)  Judge Menefee also allegedly made

8

plaintiff complete "a questionnaire for him every week" and attend weekly meetings at which he was "very aggressive in asking [her] questions." (Id. Ex. 2 at 7.)  According to plaintiff, no other newly hired ALJs were subjected to such questionnaires or meetings. (Id.)

Plaintiff further alleges that Judge Menefee warned her when she began working with him "that the attorneys who would appear before her were wary of female Judges because of former female Judges." (Id. ¶ 5.c.)  He allegedly referred to a former female ALJ as a "freak" and led plaintiff "to believe that the prior female Judges had been fired." (Id. ¶¶ 5.a, 5.d.)  When plaintiff met with Judge Clarke to discuss her concerns about Judge Menefee's treatment, he allegedly told plaintiff that the two prior female judges had been "let go/fired/forced out" and suggested that plaintiff apply for a transfer to Salinas because, "if [she] stayed in Fresno [her] PJ would made it difficult for [her]." (Id. Ex. 2 at 13.)  Because of their interactions, plaintiff was "afraid" of Judge Menefee, "dreaded" meeting with him, and felt humiliated. (Id. Ex. 2 at 7, 14.)

While the factual allegations may not make it probable that Judge Menefee harassed plaintiff because of her gender, she has at least plausibly alleged that he used non-routine questionnaires, exams, and monitoring as devices to demean and humiliate her and was generally hostile toward her because of her gender.  Taking all inferences in favor of plaintiff, the SAC sufficiently alleges that Judge Menefee subjected her to a hostile work environment because of her gender and the court must therefore deny defendants' motion to dismiss her hostile work

environment claims under Title VII and FEHA.

    B.   Gender Discrimination

To establish a prima facie case of discrimination, a plaintiff must show "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 847 (9th Cir. 2004); see also 42 U.S.C. § 2000e-2(a); Cal. Gov't Code § 12940(a); Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317, 355 (2000).

Defendants do not dispute that plaintiff sufficiently alleges she was a member of a protected class and was subject to an adverse employment action. While they argue plaintiff fails to allege she was qualified for her position, their arguments would require the court to go beyond its role in deciding a motion to dismiss. Human resources allegedly determined that plaintiff was qualified for the ALJ position and, according to the SAC, plaintiff "performed her work competently at all times." (See, e.g., SAC ¶¶ 5.e, 10.) The SAC also provides specific examples of cases in which Judge Menefee allegedly criticized plaintiff's decisions without justification. (Id. Ex. 2 at 7.) That plaintiff alleges Judge Menefee claimed she was unqualified does not preclude the inference that she was qualified, especially when she alleges that Judge Menefee unjustifiably attacked her qualifications because of her gender.

Plaintiff's SAC also at least plausibly alleges facts

giving rise to the inference of discrimination.  As previously discussed, the SAC alleges that Judge Menefee was hostile toward her because of her gender.  Judge Menefee also allegedly scrutinized plaintiff's leave time and falsely accused her of leaving work early.  (Id. ¶¶ 5.j, 9.a, Ex. 2 at 3.)  In contrast, other ALJs allegedly took more leave time than plaintiff and Judge Menefee did not question their absences or monitor their attendance.  (Id. ¶¶ 6, 9.a.)

Accordingly, because plaintiff at least plausibly alleges gender discrimination claims under Title VII and FEHA, the court must deny defendants' motion to dismiss those claims.

### C. Retaliation

Title VII and FEHA prohibit an employer from "retaliat[ing] against employees who have 'opposed any practice made an unlawful employment practice'" by Title VII or FEHA, respectively.  Davis v. Team Elec. Co., 520 F.3d 1080, 1093 (9th Cir. 2008) (quoting 42 U.S.C. § 2000e-3); Cal. Gov't Code § 12940(h) (same).  "To make out a prima facie case of retaliation under Title VII, [the plaintiff] must put forth evidence sufficient to show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision."  Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1196-97 (9th Cir. 2003); see Strother v. S. Cal. Permanente Med. Grp., 79 F.3d 859, 868 (9th Cir. 1996) (same prima facie showing for FEHA).  "[T]o constitute protected activity, a complaint must be based on an employee's 'reasonable belief' that he is reporting conduct that violates Title VII."

1  E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 967 (9th Cir.
2  2009); see also Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028,
3  1043 n.4 (2005) (same for FEHA).

4      Plaintiff alleges that on November 14, 2014, she
5  complained to Judge Clarke about Judge Menefee's alleged
6  harassment and discrimination.  (SAC ¶ 8.)  Six months later,
7  Judge Menefee informed Judge Clarke that he "intended to reject
8  Plaintiff from probation" and, two month after that, Judge
9  Menefee "influenced and participated in the decision to
10 terminate" plaintiff effective July 29, 2015.  (Id. ¶ 17.)
11 Defendants do not dispute that plaintiff's complaint to Judge
12 Clarke sufficiently alleges that she engaged in a protected
13 activity.  Nor do they dispute that plaintiff was subjected to an
14 adverse employment action.  According to defendants, plaintiff
15 nonetheless fails to allege cognizable retaliation claims because
16 the lapse of time between her complaint to Judge Clarke and the
17 adverse employment action precludes the inference of a causal
18 link between her protected activity and the adverse action.

19     The Ninth Circuit has explained that "causation can be
20 inferred from timing alone where an adverse employment action
21 follows on the heels of protected activity," but has repeatedly
22 found that durations of four months and greater between the
23 protected activity and termination are too remote to support a
24 finding of causation based on temporal proximity. Villiarimo v.
25 Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002)
26 (citing cases).  However, all of the decisions concluding that
27 the lapse of time was too long to infer a causal connection that
28 defendants rely on, and that the Ninth Circuit cited in

1  Villiarimo, were testing the sufficiency of the evidence at
2  summary judgment or after the jury reached a verdict, not the
3  sufficiency of the allegations on a motion to dismiss.  Courts
4  have also recognized that the lapse of time between the protected
5  activity and adverse action may not break the causal link if "the
6  employer engages in a pattern of conduct consistent with a
7  retaliatory intent" between the protected activity and adverse
8  action.  Wysinger v. Auto. Club of S. Cal., 157 Cal. App. 4th
9  413, 421 (2d Dist. 2007); accord Green v. Laibco, LLC, 192 Cal.
10 App. 4th 441, 455-56 (2d Dist. 2011).
11          Taking all inferences in favor of plaintiff, only six
12 months passed between plaintiff's complaint to Judge Clarke and
13 the first adverse employment action taken against her.  The SAC
14 also alleges that the harassment increased after plaintiff
15 complained to Judge Clark.  (SAC ¶ 9.)  As Judge Clarke allegedly
16 predicted, Judge Menefee continued to "make it difficult" for
17 plaintiff during this time in what the SAC suggests was an
18 attempt to make her transfer or resign.  (Id. ¶ 10; see also id.
19 ¶ 15 ("When Plaintiff complained and refused to voluntarily
20 resign, Judge Menafee made false statements about Plaintiff's
21 work and solicited negative comments from attorneys who had
22 appeared before Plaintiff . . . .").)  Taking all inferences in
23 favor of plaintiff, she has sufficiently alleged a causal
24 connection between her protected activity and the adverse
25 employment action and the court must therefore deny defendants'
26 motion to dismiss her Title VII and FEHA retaliation claims.
27          IT IS THEREFORE ORDERED that defendants' motion to
28 dismiss plaintiff's SAC be, and the same hereby is, DENIED.

Dated: August 23, 2016

/s/ William B. Shubb

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE